# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **CYNTHIA S. FLIPPIN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-17-178-SPS** |
| | ) | |
| **COMMISSIONER of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

The claimant Cynthia S. Flippin requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is REVERSED and the case REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R.

§§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision

to two inquiries: whether the decision was supported by substantial evidence and whether

correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th

Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'"

*Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v.

NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir.

1996). The Court may not reweigh the evidence or substitute its discretion for the

Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800

(10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality

of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was fifty-two years old at the time of the administrative hearing (Tr. 28, 199). She has a high school equivalent education, and has worked as a laundry worker, dishwasher, and cook's helper (Tr. 62, 234). The claimant alleges she has been unable to work since January 1, 2007, due to mental illness, depression, high blood pressure, diabetes, and panic attacks (Tr. 233).

## Procedural History

On May 5, 2014, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 199-210). Her applications were denied. ALJ Deirdre O. Dexter conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated December 23, 2015 (Tr. 10-22). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioners' final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481

## Decision of the Administrative Law Judge

The ALJ made her decision at steps four and five of the sequential evaluation. She found that the claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), except that she should never climb ladders, ropes, and scaffolds, or be exposed to unprotected heights or moving mechanical

parts.  The ALJ further found the claimant could perform simple, routine, and repetitive tasks, but not at a production rate pace; could occasionally interact with supervisors as needed to obtain work instructions; could work in proximity to co-workers, but should have no more than occasional interaction with them; and could never interact with the general public (Tr. 15).   The ALJ concluded that the claimant was not disabled because she could return to her past relevant work as a laundry worker, and alternatively, because there was other work she could perform in the national economy, *e. g.*, motel housekeeper, conveyor line bakery worker, and bakery racker (Tr. 20-21).

## Review

The claimant contends that the ALJ erred by failing to properly evaluate the opinion of treating physician Dr. Teresa Farrow.  The Court agrees, and the decision of the Commissioner must therefore be reversed and the case remanded to the ALJ for further proceedings.

The ALJ found the claimant's diabetes mellitus, anxiety disorder, and depression were severe impairments, and that her hypertension was non-severe (Tr. 12-13).  The relevant medical evidence reveals that the claimant was admitted to inpatient care at Red Rock Behavioral Services on May 23, 2014, for suicidal ideation with many unspecified plans, depression, and racing thoughts (Tr. 414).  A discharge assessment dated May 29, 2014, indicated that the claimant was stabilized and diagnosed with depressive disorder not otherwise specified (Tr. 329-31).

The claimant presented to Mental Health Services of Oklahoma for outpatient care in July 2014 (Tr. 499-501).  She reported depression, anxiety when in public, racing

thoughts, poor memory, poor concentration, and suicidal ideation without a plan (Tr. 499-508). She was diagnosed with posttraumatic stress disorder (Tr. 506). By September 2014, the claimant reported that she felt well psychologically, and Dr. Sameer Mohammed's mental status examination was normal (Tr. 517-18).

Thereafter, the claimant received inpatient care at Carl Albert Community Mental Health Center ("CACMHC") from October 16, 2014, through December 1, 2014 (Tr. 536-47, 591-99). A Discharge Summary dated December 1, 2014, reflects that the claimant's mood was much improved and her suicidal ideation was resolved (Tr. 594). She had a bright affect, good eye contact, participated in group activities, and interacted well with staff and peers (Tr. 594). Her final diagnoses included major depressive disorder, recurrent, severe, with psychotic features, and posttraumatic stress disorder (Tr. 595).

Dr. Teresa Farrow treated the claimant on an outpatient basis in March 2015 and July 2015 (Tr. 580-85). On March 24, 2015, the claimant reported that her anxiety was improved, but not resolved (Tr. 583). Dr. Farrow noted the claimant had a depressed and anxious mood and affect; logical thought processes; intact associations, judgment, and recent memory; fair insight and concentration; and no suicidal ideation (Tr. 583). She stated that the claimant's status was improving, and diagnosed her with major depressive disorder, severe, recurrent, with psychotic features, and posttraumatic stress disorder (Tr. 584). On July 24, 2015, the claimant reported that her anxiety and depression were worse, but Dr. Farrow made the same examination findings as she did in March 2015 (Tr. 580-81).

Dr. Farrow completed a form titled "Medical Statement Concerning Depression for Social Security Disability Claim" on August 28, 2015, wherein she opined that the claimant had mild restriction of activities of daily living; marked deficiencies of concentration, persistence, or pace; extreme difficulty in maintaining social functioning; repeated episodes of deterioration or decompensation; and mild inability to function independently outside the area of her home due to panic attacks (Tr. 601-03). As to specific work limitations, Dr. Farrow indicated, *inter alia*, that the claimant was moderately impaired in her ability to: (i) sustain an ordinary routine without special supervision, (ii) make simple work-related decisions, (iii) ask simple questions or request assistance, (iv) accept instructions and respond appropriately to criticism from supervisors, (v) get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and (vi) set realistic goals or make plans independently of others (Tr. 602-03). She opined that the claimant was markedly impaired in her ability to: (i) understand and remember detailed instructions, (ii) work in coordination with and in proximity to others without being distracted by them, (iii) interact appropriately with the general public, and (iv) respond appropriately to changes in the work setting (Tr. 602-03). Dr. Farrow further opined that the claimant was extremely impaired in her ability to: (i) carry out detailed instructions; (ii) maintain attention and concentration for extended periods; (iii) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (iv) complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and (v) travel in unfamiliar places or use

public transportation (Tr. 602-03). Dr. Farrow indicated the claimant's diagnoses included bipolar disorder, mixed, severe, with psychotic features, and posttraumatic stress disorder (Tr. 603).

On July 11, 2014, state agency psychologist identified as "CCG, Ph.D. 38" completed a Mental RFC Assessment and found that the claimant was markedly limited in her ability to understand, remember, and carry out detailed instructions, and interact appropriately with the general public, and moderately limited in her ability to maintain attention and concentration for extended periods (Tr.81-82). Dr. CCG explained that the claimant could perform simple tasks with routine supervision, relate to supervisors and peers on a superficial work basis, and adapt to a work situation, but could not relate to the general public (Tr. 83). Dr. CCG's findings were affirmed on review (Tr. 114-16).

At the administrative hearing, the claimant testified that she was unable to work due to her mental health (Tr. 43). She explained that she gets panic attacks that cause her to shake and prevent her from doing anything (Tr. 43). She stated that isolating herself for ten or fifteen minutes helps her calm down (Tr. 44). The claimant testified that she has lost all interest in activities, and has recently lost ninety pounds (Tr. 50). As to her attention and concentration, the claimant stated that she has difficulty completing tasks and is unable to watch a two-hour movie all the way through (Tr. 52). She further stated she moved "out in the country" because she feels like people are watching her, talking about her, or are out to get her (Tr. 52, 54). The claimant testified that she mostly spends her day in bed watching television or reading (Tr. 53).

In her written opinion, the ALJ summarized the claimant's testimony and the medical evidence. The ALJ assigned great weight to Dr. Farrow's specific functional limitations, but less weight to her overall assessment of marked and extreme limitations in social functioning and concentration, persistence, or pace (Tr. 18). In support of her determination, the ALJ noted that Dr. Farrow's opinion was internally inconsistent in terms of the claimant's disability since she found marked limitations with regard to the level of functioning required for skilled work, but found only mild to moderate limitations with regard to the areas of functioning related to unskilled work (Tr. 18). Additionally, the ALJ noted that the claimant's symptoms improved with proper treatment and medication compliance (Tr. 18). The ALJ then gave the state agency psychologists' opinions some weight, but further limited the claimant with regard to social functioning in light of her hearing testimony (Tr. 19).

The medical opinions of a treating physician such as Dr. Farrow are entitled to controlling weight if "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). When a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight to give it by considering the following factors: (i) the length of the treatment and frequency of examinations, (ii) the nature and extent of the treatment relationship, (iii) the degree of relevant evidence supporting the opinion, (iv) the consistency of the opinion with the record as a whole, (v) whether the physician is a specialist, and (vi) other factors supporting or contradicting

the opinion.  *Watkins*, 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001).  If the ALJ decides to reject a treating physician's opinion entirely, she is required to "give specific, legitimate reasons for doing so."  *Id.* at 1301.  In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight."  *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

The ALJ erred in her analysis of Dr. Farrow's opinion for several reasons.  First, the ALJ failed to analyze Dr. Farrow's opinion in accordance with the *Watkins* factors outlined above.  *See Langley,* 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§ ] 404.1527."'), *quoting Watkins,* 350 F.3d at 1300.  Although the ALJ referenced the correct analysis at the beginning of step four, she did not mention or discuss any of the factors when analyzing Dr. Farrow's opinion.  This analysis was particularly important here because Dr. Farrow was the only physician in the record who both treated the claimant's mental impairments and opined as to psychologically-based specific limitations.

Additionally, the ALJ adopted Dr. Farrow's findings as to the claimant's ability to perform skilled work and interact with co-workers, supervisors, and the general public, but rejected without explanation her limitations regarding the claimant's ability to respond appropriately to changes in the work setting, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, complete a normal workday and workweek without interruptions from psychologically-based symptoms, and perform

at a consistent pace without an unreasonable number and length of rest periods (Tr.15-18, 602-03). It was error for the ALJ to "pick and choose" in this way, *i. e.*, to cite findings supportive of his own determination while disregarding unsupportive findings. *See, e. g., Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."). In addition to evaluating Dr. Farrow's findings according to the appropriate standards and indicating what weight she was assigning to them, the ALJ should have explained why she found certain aspects of Dr. Farrow's findings persuasive but not others. *See Haga v. Astrue,* 482 F.3d 1205, 1208 (10th Cir. 2007) ("[T]he ALJ should have explained why he rejected four of the moderate restrictions on Dr. Rawlings' RFC assessment while appearing to adopt the others. An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability. . . . [T]he ALJ did not state that any evidence conflicted with Dr. Rawlings' opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of Dr. Rawlings' restrictions but not others.").

Because the ALJ failed to properly evaluate the medical evidence, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 27th day of August, 2018.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**